IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RESTORE KCMO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-00429-CV-W-WBG |
| | ) |
| GREAT LAKES INSURANCE, SE, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Sometime in January 2020, a pipe froze and burst, causing water damage to a house owned by Plaintiff Restore KCMO, LLC. Doc. 40 at 4; Doc. 47 at 5; Doc. 50 at 1-2.[1] This lawsuit arose because the parties dispute whether an insurance policy issued by Defendant Great Lakes Insurance, SE, covers the damage to Plaintiff's house. *See* Docs. 6, 13. Currently pending are several motions filed by Defendant: Motion to Exclude Testimony of Eugene Robertson (Doc. 41), Motions to Strike the Affidavit of Eugene Robertson (Docs. 49 and 52), Motion to Strike Plaintiff's Exhibits G and K from the Summary Judgment Record (Doc. 51), and Motion for Summary Judgment (Doc. 39). For the reasons explained below, Defendant's Motion to Exclude Testimony of Eugene Robertson is **GRANTED IN PART AND DENIED IN PART**, Defendant's Motions to Strike the Affidavit of Eugene Robertson are **DENIED AS MOOT**, Defendant's Motion to Strike Plaintiff's Exhibits G and K from the Summary Judgment Record is **GRANTED**, and Defendant's Motion for Summary Judgment is **DENIED**.

---

[1] Throughout this Order, page references are to the pagination applied by ECF to the parties' filings.

# I. MOTION TO EXCLUDE EXPERT TESTIMONY (Doc. 41)

Defendant moves to exclude the testimony of Plaintiff's expert, Eugene Robertson, because he has not demonstrated he has scientific, technical, or other specialized knowledge; some opinions are speculative; and some opinions are legal conclusions. Docs. 41, 42. Plaintiff opposes the motion. Doc. 45.

## A. Standard

The Federal Rules of Evidence govern the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. When determining whether expert testimony satisfies Rule 702 of the Federal Rules of Evidence, this Court utilizes a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 561 (8th Cir. 2014) (citation omitted). Since Rule 702 reflected an attempt to liberalize the admission of expert testimony, courts have described the rule as "one of admissibility rather than exclusion." *See, e.g.*, *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (citation omitted). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (citations omitted). As the proponent of Robertson's expert testimony, Plaintiff has the burden of proving by a preponderance of the evidence the admissibility of the

testimony. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 776 (8th Cir. 2021) (citation omitted), *cert. denied sub nom. 3M Co. v. Amador*, 142 S. Ct. 2731 (2022).

**B.       Discussion**

**(1)       Exclusion of Testimony Due to Insufficient Qualifications**

Defendant argues Robertson is not sufficiently qualified to be considered an expert because he does not have an engineering degree, he is not a licensed engineer, and there is no evidence "he has any experience in making the types of conclusions, comments, and calculations" in his expert report. Doc. 42 at 4. But Defendant cites no authority to support its argument. *See id.*

As explained above, Robertson may qualify as an expert based on his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702 (emphasis added). For more than fifteen years, Robertson has been an investigative consultant. Doc. 41-1 at 27; Doc. 42-4 at 3. In that role, he provides investigative engineering services, which includes analyzing how something failed, and the extent of damage caused. Doc. 41-2 at 27; Doc. 42-4 at 3. Relevant here, Robertson also has technical and consulting experience specific to "[m]oisture intrusion damage to roofs, walls, windows." Doc. 41-1 at 28. He has observed "hundreds" of residences with water or flood damage, broken water line damage, damaged roofs with water flowing through them, and the condition of building materials in those residences. Doc. 42-4 at 15, 18.

In addition, Robertson is an honor graduate of the United States Army Engineer School, and is, among other things, a biomechanics specialist, certified accident investigator, certified electrician, certified HVACR technician, and OSHA Construction Safety Professional. Doc. 41-1 at 27. He is also a member of several professional organizations, including the Society of American Military Engineers, the Institute of Electrical and Electronic Engineers, and the American Architectural Manufacturers Association. *Id*. Robertson has not yet completed the

requirements for his engineering degree,[2] but he has obtained a bachelor's degree in geology. *Id.*; Doc. 42-4 at 16, 19-20. Finally, he has provided expert deposition and trial testimony in various matters in Missouri and Kansas state courts and the United States District Court for the District of Kansas. Doc. 41-1 at 31.[3] Based on the foregoing, the Court concludes Robertson is qualified to be an expert in this matter and **DENIES** Defendant's motion to exclude Robertson's testimony based on its argument that he is not qualified.[4]

### (2) Exclusion of Certain Opinions[5]

#### (a) Speculation

Defendant also moves to exclude some of Robertson's opinions because they are speculation. Doc. 42 at 4-8. Robertson opines about whether the house's furnace was consuming natural gas, if the house's heat was on at the time, the date the pipe froze and thawed, and the direction and amount of water flowing from the pipe. Doc. 41-1 at 3-5. Defendant argues these opinions are speculative, and thus, must be excluded. Doc. 42 at 4-8.

Consistently, the Eighth Circuit has held, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Bair Hugger*, 9 F.4th at 778. If the factual basis or methodology utilized by an expert is disputed, the Court may not

---

[2] Robertson has completed about "two-thirds" of the requirements for his engineering degree. Doc. 42-4 at 20.

[3] During his deposition, Robertson stated he provided trial testimony in one matter. Doc. 42-4 at 20.

[4] To the extent Defendant contends there may be gaps in Robertson's qualifications, education, or knowledge, those gaps "generally go to the weight of the witness's testimony, not its admissibility." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100-01 (8th Cir. 2006) (citation omitted); *see also Am. Auto. Ins. Co. v. Omega Flex Inc.*, 783 F.3d 720, 726 (8th Cir. 2015). At trial, Defendant will have the opportunity to question Robertson about any alleged gaps in his qualifications, education, or knowledge. With that information, the jury will assess what weight to give Robertson's testimony. To the extent Defendant contends Robertson cannot apply his experience to the observations he made of the residence, such an argument is unavailing. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

[5] When responding to Defendant's motion to exclude, Plaintiff included an affidavit executed by Robertson on July 21, 2022. Doc. 45-3. That affidavit, which Defendant separately moves to strike (*see* Doc. 49), provides additional information related to the opinions Defendant seeks to exclude. *See id.* When deciding Defendant's motion to exclude, the Court did not rely on the recently executed affidavit. *See infra*, section II(A).

exclude the expert unless the expert's opinion is "so fundamentally unsupported . . . it can offer no assistance to the jury." *Id*. (citations omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of addressing "shaky but admissible evidence." *Id*. (quoting *Daubert*, 509 U.S. at 596). The Eighth Circuit has instructed district courts "not to weigh or assess the correctness of competing expert opinions." *Johnson*, 754 F.3d at 562 (citation omitted). Accordingly, the jury, not the Court, decides among different experts' conflicting views. *Hill v. Sw. Energy Co.*, 858 F.3d 481, 486 (8th Cir. 2017) (citation and internal quotations omitted).

The Court finds Robertson's opinions are based on his knowledge, experience, investigation, research, and the facts of this matter. His opinions are not so fundamentally unsupported that they will not aid the jury. As with any expert witness, Defendant may cross-examine Robertson on the factual bases of his opinions. The jury will then decide if Robertson's opinions are sufficiently supported and whether he is credible. For these reasons, the Court **DENIES** Defendant's motion to exclude Robertson's opinions based on speculation.

      **(b)**       **Legal Conclusions**

Defendant also moves to exclude Robertson's opinions about the insurance policy, the applicability of specific policy provisions, and whether the insured complied with the policy. Doc. 42 at 8. It argues Robertson is not qualified to opine on these issues, and these opinions are legal conclusions. *Id*. Despite Robertson's testimony that he is not an expert on interpreting insurance policies (Doc. 42-4 at 14), Plaintiff opposes Defendant's motion because "Robertson's opinions logically relate to whether the subject Property damage falls within any policy exclusions" and "are based upon his years of experience in dealing with . . . property claims." Doc. 45 at 12.

Plaintiff also argues "Robertson clearly does not need to be an expert to understand and interpret . . . an insurance policy." *Id*.

An expert's testimony may embrace "an ultimate issue to be decided by the trier of fact." *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990) (citing Fed. R. Evid. 704(a)). If, however, the expert's opinion is "couched in legal conclusions" that supply "the fact finder with no information other than what the witness believes the verdict should be," the court may exclude the testimony. *Id*. (citation omitted); *see also In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) (observing a district court does not abuse its discretion when it excludes expert opinions that are "little more than legal conclusions"). Relevant here, an expert should not be permitted to opine about whether a party complied with a contract. *See The Shaw Grp., Inc. v. Marcum*, 516 F.3d 1061, 1068 (8th Cir. 2008); *see also Jackson v. Mizuho Orthopedic Sys., Inc.*, No. 11-00799-CV-W-GAF, 2012 WL 13028557, at *3 (W.D. Mo. Aug. 22, 2012) (citation omitted).

Regardless of whether Robertson is qualified to opine about the insurance policy, his opinions about the provisions or whether Plaintiff complied with the policy are couched as legal conclusions. And these opinions simply inform the jury of what Robertson believes the verdict should be. Accordingly, the Court **GRANTS** Defendant's motion to exclude Robertson opinions that are legal conclusions. He will not be permitted to opine on the insurance policy, the applicability of any provision therein, or whether the insured complied with the policy.

### II.     MOTIONS TO STRIKE ROBERTSON'S AFFIDAVIT (Docs. 49, 52)

When responding to Defendant's motion to exclude and motion for summary judgment, Plaintiff filed an affidavit executed by Robertson on July 21, 2022. *See* Doc. 45-3; Doc. 47-9. Defendant moves to strike this affidavit because it contains "additional opinions and/or additional

bases for his opinions . . . from those expressed in his original report and deposition." Doc. 49 at 1; Doc. 52 at 1. Plaintiff argues Robertson's July 21, 2022 affidavit should not be stricken because it does not change his testimony. Doc. 53 at 1-3; Doc. 54. Instead, Plaintiff contends the affidavit gives a "proactive and comprehensive response" to Defendant's arguments and defends "the integrity of [Robertson's] expertise, credibility and opinions." Doc. 53 at 2-3.[6]

**A.** **Affidavit Submitted with Response to Motion to Exclude (Doc. 45-3)**

When considering Defendant's motion to exclude Robertson's testimony, the Court did not rely on Robertson's July 21, 2022 affidavit accompanying Plaintiff's opposition to Defendant's motion. *See supra*, section I(B)(2). The Court's ruling was based on the parties' briefing; Robertson's report, qualifications, and deposition testimony; and the applicable law. *See id*. Accordingly, Defendant's motion to strike Robertson's affidavit submitted in response to its motion to exclude is **DENIED AS MOOT**.

**B.** **Affidavit Accompanying Response to Motion for Summary Judgment (Doc. 47-9)**

When responding to Defendant's summary judgment motion, Plaintiff utilizes Robertson's affidavit to (1) controvert one fact asserted by Defendant, and (2) support Plaintiff's arguments that a genuine issue of material fact prevents entry of summary judgment in Defendant's favor. The Court discusses Plaintiff's uses separately.

**(1)** **Controverting One of Defendant's Asserted Facts**

In support of its summary judgment motion, Defendant sets forth what it believes to be material facts in this matter. Doc. 40 at 4-9. Among other things, Defendant asserts the house's

---

[6] Plaintiff correctly states Robertson's trial testimony "will remain within the boundaries of his report and deposition content." Doc. 53 at 3. Pursuant to the Federal Rules of Civil Procedure, an expert's testimony may not exceed the scope of his report and deposition testimony unless the offering party shows its failure to provide the information required by Rule 26(a) or 26(e) was substantially justified or harmless. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii), 26(a)(2)(E), 26(e), 37(c)(1); *see also* Doc. 11 at 3 (stating experts "will be limited to opinions and information contained in [his] report and in any depositions").

furnace "was not on or consuming any gas . . . since at least August 2019." *Id*. at 7.  In support thereof, Defendant cites its expert's deposition and report, Robertson's deposition, and other documents.  *Id*.  In response, Plaintiff controverts the fact, relying on Robertson's deposition testimony and his July 21, 2022 affidavit.  Doc. 47 at 6.  Robertson's deposition testimony that the house consumed gas in December 2019 and January 2020 controverts Defendant's asserted fact.  Doc. 47-8 at 10.  Because the deposition testimony serves the same purpose as the affidavit, it is unnecessary for the Court to consider the portion of Robertson's affidavit that Plaintiff also cites.  Therefore, the Court **DENIES AS MOOT** Defendant's motion to strike this portion of Robertson's affidavit.

**(2)    Supporting Arguments**

Plaintiff relies on Robertson's affidavit throughout its argument that a genuine issue of material fact prevents entry of summary judgment in Defendant's favor.  *See, e.g.*, Doc. 47 at 10[7] (stating Robertson confirmed, based on the Spire utility records, that natural gas was consumed), 11 (asserting Defendant's contention "is directly countered by Robertson's affidavit"), 12 (noting Robertson "affectively [sic] counters" Defendant's argument as to how long water infiltrated the house), and 14-15 (citing Robertson's affidavit to demonstrate Defendant's expert's opinion about the volume of water infiltration "is a physical impossibility.").  Plaintiff's arguments are based on facts supported, at least in part, by Robertson's affidavit.  However, Plaintiff did not properly set forth the material facts it claims are at issue.

Pursuant to the Federal Rules of Civil Procedure and the Court's Local Rules, a party opposing a summary judgment motion who relies on facts not contained in the movant's

---

[7] Although Plaintiff refers to "Exhibit C," which is Defendant's Expert's Report, it is clear Plaintiff intended to cite Robertson's affidavit (Exhibit I).

suggestions "must add a concise listing of material facts"; set forth each disputed material fact in "a separately numbered paragraph"; cite the portion of the record supporting the fact; and if not contained in another document filed in the matter, attach a copy of the relevant excerpt supporting the fact. Fed. R. Civ. P. 56(c)(1)(A); L.R. 56.1(b)(2), (d).[8] Defying these requirements, the facts upon which Plaintiff relies in its argument are not listed as material facts or set forth in separate paragraphs. *See* Doc. 47 at 10-17. Regardless, the Court did not consider Robertson's affidavit when evaluating and deciding the pending summary judgment motion. Accordingly, the Court **DENIES AS MOOT** Defendant's motion to strike Robertson's affidavit.

### III. MOTION TO STRIKE EXHIBITS G AND K (Doc. 51)

Defendant also moves to strike two exhibits submitted with Plaintiff's response to Defendant's summary judgment motion. Doc. 51.

**A. Plaintiff's Exhibit G (Doc. 47-7)**

Defendant moves to strike Exhibit G (Doc. 47-7), which is the affidavit of Jonathan Phillips. Defendant argues Phillips failed to establish he has personal knowledge of (1) the house being occupied, (2) visits to the house, (3) utilities being activated due to plans for construction, and (4) the house's furnace and/or heat being operational. Doc. 51 at 3-5. Plaintiff opposes the motion, arguing Phillips swore his affidavit was "true and correct," and Defendant ignores Phillips's role in this lawsuit. Doc. 55 at 3-4.

If an affidavit is utilized to oppose a summary judgment motion, the affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The affidavit

---

[8] Plaintiff's briefing demonstrates it was aware of these requirements. When responding to Defendant's summary judgment motion, Plaintiff set forth paragraphs of what it claimed were undisputed facts, cited portions of the record in support thereof, and attached exhibits to its response. Doc. 47 at 4; *see also* Docs. 47-1, 47-2, 47-3, 47-4, 47-13.

"must include enough factual support to show that the affiant possesses that knowledge." *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995) (citations omitted). The Court may not consider an affidavit that does not satisfy the Rule 56 requirements. *Id*. at 429 (citations omitted).

In the affidavit, Phillips states he is Plaintiff's "authorized representative," but provides no further information about his position, responsibilities, experience, and/or knowledge. *See* Doc. 47-7 at 1. Nor does he indicate the source – e.g., business records, firsthand knowledge, etc. – of the information in his affidavit. *See id*. Because Phillips's affidavit does not show he has personal knowledge of and is competent to testify about the matters stated therein, the Court **GRANTS** Defendant's motion to strike Phillips's affidavit.[9]

**B.     Plaintiff's Exhibit K (Doc. 47-11)**

Defendant also moves to strike Exhibit K, which is an April 24, 2020 email from Plaintiff's adjuster to Defendant's adjuster, because it is hearsay or hearsay within hearsay. Doc. 51 at 1-2. Defendant's motion to strike focuses on the portion of the email identifying the dates on which Bob Redmond, who provided real estate services for Plaintiff, visited the house. *See id*. Plaintiff does not counter Defendant's argument that the email constitutes hearsay. Doc. 55 at 2-3. Instead, Plaintiff argues the email should not be stricken because its expert relied on the email in reaching his opinions. *Id*. (citing Fed. R. Evid. 703).

---

[9] Although the Court strikes Phillips's affidavit, some information contained therein is before the Court in another form. Two exhibits proffered by Defendant and admissible during the summary judgment stage – i.e., Plaintiff's interrogatory answers (Doc. 40-9) and Phillips's deposition testimony (Doc. 40-11) – provide the same information about the property being occupied. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to . . . materials in the record, including depositions, . . . interrogatory answers . . . ."). Similar to Phillips's affidavit, Plaintiff's interrogatory answers state the house "was occupied at various times through routine visits by property management staff, team members, agents, contractors, vendors and other personnel as it was being prepared for rehabilitation and/or additions in an attempt to sell the property." *Compare* Doc. 40-9 at 12 *with* Doc. 47-7 at 1; *see also* Doc. 40-11 at 36 (testifying the house was not vacant because "people were in this property regularly."). These exhibits also set forth Bob Redmond was a "routine inspector" of the house and the dates on which he visited the house. Doc. 40-9 at 10-11, 14; Doc. 40-11 at 12-13, 24-25, 30-31. Phillips's affidavit listed the same dates. Doc. 47-7 at 1-2.

An expert may "rely on otherwise inadmissible hearsay in forming the basis of his opinion, so long as the hearsay is of the type reasonably relied upon by experts in his field." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) (citing Fed. R. Evid. 703 and *Brennan v. Reinhart Institutional Foods*, 211 F.3d 449, 450 (8th Cir. 2000)). Nothing in the record before the Court establishes an expert in Robertson's field would have reasonably relied upon such an email. As a result, the Court is unable to determine if Robertson properly relied on the email in reaching his opinion. Therefore, the Court **GRANTS** Defendant's motion to strike Exhibit K.[10]

### IV. MOTION FOR SUMMARY JUDGMENT

**A. Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (citations omitted). To support its assertion that no genuine dispute of material fact exists, the movant must cite "to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1), (3)-(4); L.R. 56.1(a), (d). In response, the nonmovant must set forth facts demonstrating a genuine issue for trial; showing the movant's cited materials "do not establish the absence . . . of a genuine dispute" or the movant "cannot produce admissible evidence to support the fact"; and/or objecting "that the material cited . . . cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)-(2); *see also* Fed. R. Civ. P. 56(c)(3)-(4), (e); L.R. 56.1(b)-(d). Whether asserting or contesting a fact, a party must cite evidence that could be

---

[10] Similar to Exhibit G, the information about Redmond's visits to the house is before the Court in another form. Plaintiff's answers to interrogatories, which Defendant proffers in support of its summary judgment motion, identify the dates Redmond visited the house. Doc. 40-9 at 10-11, 14.

presented in an admissible form at trial. Fed. R. Civ. P. 56(c)(2); *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (citations omitted).

When considering a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *See Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). The Court is not permitted to make credibility determinations or weigh evidence. *Id*. If the record "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Lissick v. Andersen Corp.*, 996 F.3d 876, 882 (8th Cir. 2021) (citation omitted).

**B.     Undisputed Facts**[11]

Between at least August 2019 and August 2020, Plaintiff owned the house located at 11214 Herrick Avenue in Kansas City, Missouri ("the house"). Doc. 40 at 4; Doc. 40-11 at 9; Doc. 47 at 4-5; Doc. 50 at 1. During that time, Plaintiff purchased a property protection insurance policy from Defendant. Doc. 40 at 4; Doc. 40-2; Doc. 47 at 5. The policy, absent certain exclusions and limitations, insured against risks of direct physical damage to the house. Doc. 40 at 4-6; Doc. 40-2 at 4, 9-18, 24-25, 27, 31, 33, 37-40; Doc. 47 at 5.

Sometime in January 2020, a pipe in the house's attic space froze and ruptured. Doc. 40 at 6; Doc. 47 at 4-5. As a result, water discharged into the house during January and February 2020, causing damage. Doc. 40 at 6; Doc. 47 at 4-6. On February 25, 2020, the ruptured pipe and water damage were discovered. Doc. 40 at 7; Doc. 47 at 6. Thereafter, Plaintiff filed a claim,

---

[11] Unless otherwise noted, this section includes facts undisputed by the parties. Nothing in this section should be construed as a finding of fact by the Court.

which Defendant denied. Doc. 47 at 4; Doc. 47-4; Doc. 50 at 3. In its denial letter, Defendant stated the following:

> You have reported a claim for water damage to your . . . property from accidental discharge of water from a plumbing system. The cause of the loss has been determined to be a frozen pipe. Evidence has suggested that the heat was not on at the loss location. We would also advise that the property was not inspected on a bi-weekly basis as the policy calls for.
>
> As outlined in the . . . policy language, a loss resulting from a frozen pipe where in [sic] the property is vacant, the utilities are not turned off and the heat is not kept at a minimum of 55 degrees . . . is excluded from coverage. The property must be inspected bi-weekly.

Doc. 47-4 at 5. The parties' dispute about insurance coverage led to Plaintiff bringing claims against Defendant for breach of contract and vexatious refusal to pay. Doc. 6.

**C.      Relevant Insurance Policy Provisions**

The parties agree the relevant insurance policy provisions are as follows:

> **ENDORSEMENTS:** . . .
> The following warranties apply to this policy, as applicable, unless agreement has been received by the insurer in writing to the contrary:
>
> Vacant and/or Course of Construction:
> Vacant means at the time of the loss or damage, construction of the property has stopped or has completed and the property has not been permanently occupied/lived in for fourteen (14) consecutive days. It is warranted that vacant property(ies) are locked and secured against unauthorised entry at all times . . . .
>
> Utility Clause:
> While the property is vacant, the Insured must use reasonable care to:
>     a) Disconnect all utilities and drain water tanks, apparatus and pipes; or
>     b) Maintain and keep the property heated to a temperature of at least 55 degrees [F]ahrenheit[.]
>
> Regular Visits:
> All vacant properties must be visited at least bi-weekly by the Insured, or a representative of the Insured, to ensure that there are no signs of loss or damage to the insured property or evidence of forcible entry or exit to the property.

Doc. 40-2 at 4-5.

**IMPORTANT INFORMATION REGARDING YOUR BINDER**
This contract of insurance is based upon the information and representations you provided in your submission / application.

Depending on the type of information and representations that you provided, the proposed contract of insurance includes certain conditions and/or warranties. Kindly review all the contract of insurance documentation, including any binder, declarations page, policy forms and endorsements to familiarize yourself with any conditions and/or warranties included in the contract of insurance. These conditions and/or warranties may require you to take specific actions, to refrain from taking specific actions, to fulfil [sic] certain requirements and/or to verify specific facts.

Please be advised that strict compliance with the conditions and/or warranties contained in the proposed contract of insurance is required. If you do not strictly comply with the conditions and/or warranties contained within the contract of insurance, then the insurer may deny or limit coverage for any claim submitted by you under the contract of insurance.

*Id*. at 7.

**INSURING AGREEMENT**
The Underwriters will provide the insurance described in this Policy in return for the premium and compliance with all applicable provisions of this Policy. The Mortgagor of property covered by this Policy shall be considered an Additional Insured in respect of any residual amounts of insurance over and above the Named Insured's interest in the said property. The Named Insured shall be liable for the premium(s) due under this Policy.

**GENERAL PROVISIONS** . . .
C.   PERILS INSURED AGAINST: Subject to its exclusions, conditions and all other provisions this Policy insures against All Risks of Direct Physical Damage.

*Id*. at 9.

**PERILS INSURED AGAINST BY THIS POLICY**
The Underwriters will insure for All Risks of Direct Physical Damage except with regard to the following causes:

**CAUSES NOT INSURED AGAINST BY THIS POLICY** . . .
11.   Freezing of a plumbing, heating or air conditioning system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing while the dwelling is vacant, unoccupied or being constructed unless the Insured has used reasonable care to:
    (a) Maintain heat in the building; or
    (b) Shut off the water supply and drain the system and appliances of water.

> . . . .
>
> 16. Continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating or air conditioning system or from within a household appliance.[12]

*Id*. at 14, 16.

**D.     Discussion**

**(1)     Breach of Contract Claim**

In Missouri,[13] the general rules of contract interpretation apply to insurance policies. *See Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007) (citation omitted). Ordinarily, the interpretation of a contract is a question of law. *See Hudson Specialty Ins. Co. v. Brash Tygr*, *LLC*, 769 F.3d 586, 590 (8th Cir. 2014) (citation omitted); *D.R. Sherry Constr., Ltd. v. Am. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 902-03 (Mo. banc 2010) (citation omitted). However, when an underlying material fact is disputed, a jury question is presented. *Hudson Specialty Ins.*, 769 F.3d at 590; *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 107 (Mo. Ct. App. 2004) ("Disputes arising from the interpretation and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute.").

When interpreting a contract, a court ascertains the parties' intention and gives effect to their intention. *Johnson v. Safeco Ins. Co.*, 983 F.3d 323, 329-30 (8th Cir. 2020). The parties' intention "is presumptively expressed by the plain and ordinary meaning of the policy's

---

[12] Although the parties agree Paragraph 16 is relevant, neither party presents arguments supporting entry or denial of summary judgment related to this paragraph. *See* Docs. 40, 47. Therefore, the Court does not address this paragraph's applicability, if any, to the facts presented in this matter.

[13] Because jurisdiction is based on diversity, this Court applies the forum state's substantive law. *See Hodge v. Walgreen Co.*, 37 F.4th 461, 464 (8th Cir. 2022). In their briefing, both parties specify Missouri law applies. Doc. 40 at 11-12; Doc. 47 at 8. Additionally, pursuant to the insurance policy, "the applicable state law" is to be determined by a court "of competent jurisdiction," and Defendant agreed to submit to the jurisdiction of a Court "of competent jurisdiction" within the United States. Doc. 40-2 at 28-29. Neither party argues this Court is not "of competent jurisdiction."

provisions." *Id*. (citation omitted). Generally, the plain and ordinary meaning is that which "would be attached by an ordinary lay person of average understanding if purchasing insurance." *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015) (citation omitted). Specific to insurance policies, the insured "must establish coverage under the policy, but the insurer must establish that an exclusion to coverage applies." *Estate of Overbey v. Universal Underwriters Ins. Co.*, 645 S.W.3d 641, 649 (Mo. Ct. App. 2022) (quoting *Taylor*, 457 S.W.3d at 344). Exclusions to coverage "are construed strictly against the insurer." *Id*.; *see also Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc 2010).

Here, the policy insures against the risk of physical damage to Plaintiff's house. Doc. 40-2 at 4, 9-18, 24-25, 27, 31, 33, 37-40. But the policy excludes coverage for damage caused by "[f]reezing of [ ] plumbing . . . while the dwelling is vacant, unoccupied or being constructed unless the Insured has used reasonable care to . . . [m]aintain heat in the building . . . ." *Id*. at 14, 16.[14] The parties agree a frozen pipe ruptured and caused damage to the house, and no construction was occurring at the house at the time. Doc. 40 at 4, 9; Doc. 47 at 5, 7. The parties dispute whether the house was vacant or occupied, whether Plaintiff used reasonable care to maintain heat in the building, and whether Plaintiff visited the house on at least a bi-weekly basis.

      **(a)**      *Vacant or Unoccupied*

Pursuant to the policy, a property is "vacant" when, at the time of the loss or damage, it "has not been permanently occupied/lived in for fourteen (14) consecutive days." Doc. 40-2 at 5.[15] Although Plaintiff argues the house was "occupied and not vacant at various times" because

---

[14] The policy exclusion requires Plaintiff to use reasonable care to "[m]aintain heat in the building" or "[s]hut off the water supply and drain the system and appliances of water." Doc. 40-2 at 16. Both parties focus on whether heat was maintained in the building, and nothing in the record establishes Plaintiff shut off the water. Thus, the Court concentrates solely on whether heat was maintained in the house.

[15] The provision also required cessation or completion of construction at the house. Doc. 40-2 at 5. As noted above, the parties agree no construction occurred at the house in January and February 2020. Doc. 40 at 9; Doc. 47 at 7.

16

Case 4:21-cv-00429-WBG   Document 60   Filed 01/04/23   Page 16 of 20

property management personnel visited the house, Plaintiff admits the house "was not permanently occupied/lived in at any time between January 1, 2020, and March 1, 2020." Doc. 40-9 at 15; Doc. 40-10; Doc. 47 at 6. In addition to Plaintiff's admission, other evidence in the record indicates no one permanently occupied the house after October 31, 2017. *See* Doc. 40-12 at 6-11. Based on the foregoing, the Court concludes the house was vacant, as defined in the policy, at the time the pipe froze and ruptured.

Because the house was vacant, the Court does not need to determine if the house was also unoccupied. Doc. 40-2 at 14-16 (excluding coverage for damages caused by frozen pipes when the house is "vacant, unoccupied or being constructed.") (emphasis added). Nonetheless, the Court notes that, other than a passing reference to the house being "occupied" when responding to Defendant's statement of facts, Plaintiff fails to demonstrate there is a genuine issue for trial. *See* Doc. 47. And, even if the Court were to find the house was "unoccupied," a term the policy does not define, the same analysis applies regarding Plaintiff's obligation to use reasonable care.

### (b) *Reasonable Care*

Because the property was vacant, the policy required Plaintiff to use "reasonable care to . . . [m]aintain heat in the building." Doc. 40-2 at 16. The policy's utility clause further provided Plaintiff "must use reasonable care to . . . [m]aintain and keep the property heated to a temperature of at least 55 degrees [F]ahrenheit" while the property is vacant. *Id*. at 5. Before addressing whether Plaintiff satisfied its obligations under the policy, the Court must first consider Plaintiff's argument that the term "reasonable care" is ambiguous. Doc. 47 at 8.[16]

---

[16] Plaintiff also claims whether a term is ambiguous is a question of fact. Doc. 47 at 8. Contrary to Plaintiff's argument, whether a contract term is ambiguous is a question of law. *See Am. Family Mut. Ins. Co. v. St. Clair*, 295 S.W.3d 586, 591 (Mo. Ct. App. 2009) (citation omitted).

A contract term is considered ambiguous when the term is "reasonably open to different constructions." *Nationwide Ins. Co. of Am. v. Six*, 652 S.W.3d 278, 282 (Mo. Ct. App. 2022) (citation omitted). As the party claiming the policy is ambiguous, Plaintiff bears the burden of proving an ambiguity. *See Estate of Hughes v. State Farm Mut. Auto. Ins. Co.*, 485 S.W.3d 357, 362-63 (Mo. Ct. App. 2016). While Plaintiff argues "reasonable care" is ambiguous, it fails to present any legal argument, reference anything in the record, or cite any authority to supports its position that "reasonable care" could be "reasonably open to different constructions." *See* Doc. 47. The Court cannot find a term is ambiguous "simply because the parties disagree over its meaning." *Bar Plan Mut. Ins. Co. v. Chesterfield Mgmt. Assocs.*, 407 S.W.3d 621, 628 (Mo. Ct. App. 2013) (citation omitted). Thus, Plaintiff fails to establish "reasonable care" is ambiguous.[17]

The parties dispute whether Plaintiff used reasonable care to heat the house as required by the policy. Doc. 40 at 7-9, 15-19; Doc. 47 at 6-7, 9-13. Generally, whether a party "acted reasonably is an inherently factual inquiry left to the province of the jury." *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 471 (Mo. Ct. App. 2013) (citation omitted) (stating it "is never appropriate" for the court to resolve whether a party acted reasonably "where the underlying facts remain in dispute or where fair-minded people, exercising reasonable judgment, could reach different conclusions on the issue in controversy."); *see also Drury Co. v. Mo. United Sch. Ins. Counsel*, 455 S.W.3d 30, 38-39 (Mo. Ct. App. 2014).[18] In contrast, whether a party exercised reasonable care is not a fact question when "the facts are such that all reasonable

---

[17] Because "reasonable care" is unambiguous, the Court applies the plain and ordinary meaning of the term. *See Nationwide Ins. Co. of Am. v. Six*, 652 S.W.3d 278, 281 (Mo. Ct. App. 2022) (citation omitted); *TCN Invs., LLC v. Superior Detail*, 588 S.W.3d 245, 251 (Mo. Ct. App. 2019) (citation omitted). Reasonable, or ordinary, care is the "degree of care . . . an ordinarily careful person would use under same or similar circumstances." *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 158 (Mo. banc 2000); *State ex rel. Grear v. Ellison*, 182 S.W. 961, 965 (Mo. banc 1916) (finding reasonable care and ordinary care are "technically synonyms.").

[18] The Court notes that although *Doe Run* and *Drury* pertain to whether the insurer acted reasonably when it refused to pay an insurance claim, the cases are persuasive in this instance.

men must draw the same conclusion from them." *Jugan v. Econ. Premier Assurance Co.*, 728 Fed. Appx. 86, 92 (3d Cir. 2018) (finding summary judgment was appropriately granted when the insureds pointed to no evidence showing they used reasonable care to maintain heat in their home).[19]

Viewing the facts and drawing reasonable inferences in the light most favorable to Plaintiff, the Court finds there are disputed issues of material fact regarding whether Plaintiff used reasonable care in maintaining heat in the house. Accordingly, the Court **DENIES** Defendant's summary judgment motion on Plaintiff's breach of contract claim.

### (c) Regular Visits

In addition to the foregoing, the Court also finds disputed issues of material fact related to Plaintiff's obligation to regularly visit the house preclude entry of summary judgment in Defendant's favor. According to the policy, "[a]ll vacant properties must be visited at least bi-weekly by the Insured, or a representative of the Insured, to ensure that there are no signs of loss or damage to the insured property or evidence of forcible entry or exit to the property." Doc. 40-2 at 5. Defendant maintains "there has been no evidence in the case" showing Plaintiff fulfilled its obligation. Doc. 50 at 11. Yet, Defendant provided evidence contradicting its argument. That is, Defendant submitted Plaintiff's interrogatory answers as an exhibit to its summary judgment motion. Doc. 40-9. These interrogatory answers, which are admissible at the summary judgment stage, provide the dates on which Plaintiff claims its representative visited the property. Doc. 40-9 at 10-11, 14; Fed. R. Civ. P. 56(c)(1)(A). Based on the record, the Court finds a genuine issue of material fact exists with regard to whether Plaintiff visited the house on at least a bi-weekly

---

[19] Both parties cite this Third Circuit case; however, neither party correctly cites the volume in which the decision was published. *See* Doc. 40 at 13; Doc. 47 at 9 (referencing Defendant's citation to this case).

basis. For this additional reason, the Court **DENIES** Defendant's summary judgment motion on Plaintiff's breach of contract claim.

**(2) Vexatious Refusal Claim**

Defendant also moves for summary judgment on Plaintiff's vexatious refusal to pay claim. To establish a claim for vexatious refusal to pay, Plaintiff must show (1) it had an insurance policy with Defendant, (2) Defendant refused to pay, and (3) Defendant's refusal was without reasonable cause or excuse. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. banc 2006). Plaintiff's vexatious refusal to pay claim is related to its underlying breach of contract claim. Thus, because the Court finds genuine issues of material fact prevent entry of summary judgment in Defendant's favor on Plaintiff's breach of contract claim, the Court also **DENIES** Defendant's summary judgment motion on Plaintiff's vexatious refusal to pay claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude Testimony of Eugene Robertson (Doc. 41) is **GRANTED IN PART AND DENIED IN PART**, Defendant's Motions to Strike the Affidavit of Eugene Robertson (Docs. 49 and 52) are **DENIED AS MOOT**, Defendant's Motion to Strike Plaintiff's Exhibits G and K from the Summary Judgment Record (Doc. 51) is **GRANTED**, and Defendant's Motion for Summary Judgment (Doc. 39) is **DENIED**.

**IT IS SO ORDERED.**

DATE: January 4, 2023  /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE